LAW OFFICES OF IVETTE AMELBURU MANINGO
IVETTE AMELBURU MANINGO, ESQ.
NEVADA BAR NO.: 7076
400 S. Fourth Street, Ste. 500
Las Vegas, NV 89101
Tele.: (702) 793-4046
Fax: (844) 793-4046
Email:iamaningo@iamlawnv.com
*Attorney for Defendant Ricardo Densmore*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    vs.<br><br>RICARDO DENSMORE,<br><br>             Defendant. | CASE NO. 2:20-mj-00464-BNW<br><br>**RESPONSE TO MOTION FOR REVIEW OF RELEASE ORDER AND EMERGENCY MOTION FOR IMMEDIATE RELEASE**<br>. |

**Certification: This Brief is timely filed.**

COMES NOW, the Defendant, RICARDO DENSMORE, by and through his Attorney, IVETTE AMELBURU MANINGO, ESQ., and hereby moves this Court for an immediate release and in response to the government's Motion for Review of Release Order. This Motion is made and based upon the papers and pleadings on file in this matter, the Points and Authorities which follow, and argument of counsel hereinafter entertained by the Court at any hearing of said Motion.

Dated this 7th day of June, 2020.

              /s/ Ivette Amelburu Maningo
IVETTE AMELBURU MANINGO, ESQ.
NEVADA BAR NO.: 7076
400 S. Fourth Street, Ste. 500
Las Vegas, NV 89101
Tele.: (702) 793-4046
Fax: (844) 793-4046
Email:iamaningo@iamlawnv.com

## I. INTRODUCTION

On June 5, 2020, Tyree Walker and Ricardo Densmore were ordered to be released from federal custody with strict conditions after exhaustive detention hearings. At the detention hearing, after the Court made its ruling, the government requested a stay of the release order. Magistrate Judge Weksler denied the request. Directly after the ruling, the government moved this Court to stay their release on an emergency basis pending its appeal of the release order. The motion was granted by this Court at 10:07 p.m. on Friday night, thirty (30) minutes after the filing of the Motion and two and one-half (2 ½) hours after the end of Densmore's detention hearing. The government has no legal authority or standing to support its request for an emergency stay and therefore this Court should immediately order the release of Ricardo Densmore.

## II. BACKGROUND / FACTS

On June 4, 2010, the Government filed a Complaint charging Tyree Walker, Devarian Haynes and Ricardo Densmore with one count of Conspiracy to Commit Arson (18 U.S.C. § 844(n)) and Arson (18 U.S.C. § 844(i)) ECF Dkt. #1. These charges arise out of an incident involving the fire damage of an unoccupied police vehicle that occurred at a protest in Downtown Las Vegas. As the Court is aware, there have been thousands of protests throughout the United States and around the world for the Black Lives Matter movement after the brutal killing of George Floyd by law enforcement officers captured on tape in Minnesota. Walker, Haynes and Densmore attended the local downtown protests on May 31, 2020. While at the protests, the government has alleged that Walker and Hayes set an unoccupied Las Vegas Metropolitan Police Department car on fire while Densmore recorded the event. The Complaint further asserts that Walker, Haynes and Densmore all confessed to their involvement in the incident.

On June 2, 2020, Walker and Haynes were arrested for their roles in the incident. While Densmore is not accused of actually lighting the fire, he is accused of and admitted to recording the incident. As such, Densmore was also arrested and the initial arraignment for all three (3) defendants

was scheduled for June 5, 2020.  Undersigned counsel was appointed to represent Densmore on June 4, 2015. On the morning of June 5, 2020, the undersigned scheduled a video meeting with Densmore for the earliest spot offered to the undersigned in order to allow pre-trial services sufficient time to interview Densmore and provide the Magistrate with as much information as possible at the detention hearing. That morning, undersigned counsel was asked by pretrial services to agree to a "refusal report" and postpone Densmore's arraignment and detention hearing until Monday morning because of the busy schedule.  Undersigned counsel opposed this request on behalf of Densmore.

The undersigned was scheduled to speak to Densmore at 11:00 a.m and pre-trial services was to immediately thereafter interview him.  Due to delays with prior interviews and because only one room at the detention center was made available for all inmates that day, the undersigned was not able to speak to Mr. Denmore until 1:00 pm on June 5, 2020.  However, Pretrial services was able to interview Densmore immediately thereafter and the undersigned and her paralegal were present during same. Throughout the interview, Densmore answered all of pretrial's questions, provided employment status, the names and addresses of the individuals he could reside with if granted release, medical/mental health history, drug/alcohol history, other backround information, and provided answers to any and all other questions the pretrial officer asked.

Despite Densmore's interview with Pretrial and the gathering of information throughout, the Pretrial Services Report (PSR) provided recommended detention stating that most of the information needed could not be obtained from Densmore.  Specifically, the Pretrial officer made a recommendation of detention stating that Densmore posed a risk of non appearance because of lack of information about background, lack of verified information about background, and unknown mental/substance abuse. PSR Pg. 3.  The PSR futher stated that Densmore posed a danger to the community based on the nature of charges, unknown mental health history, prior arrests and unknown substance abuse history. PSR Pg. 3. Therefore, while Pretrial had most of the information it purported it lacked, the PSR failed to provide

said information as if Densmore had somehow refused the interview.  In addition to disgregarding the information provided to Pretrial, the PSR makes it clear that here was no attempt made to verify any of the information provided by Densmore prior to the detention hearing.

At the hearing, the government sought the detention for all three (3) defendants.  Haynes initially proceeded and argued but thereafter postponed his detention hearing.  Walker proceeded and was released with conditions.  Consistent with his previous objection to Pretrial's early request that he agree to a "refusal report" and continue the hearing, Densmore advised the Magistrate that he still wanted to proceed with his detention hearing.  Judge Weksler made her findings and ultimately found that conditions could be fashioned to reasonably assure Densmore's appearance and the safety of the community and ordered he be released under strict conditions.

During Densmore's hearing, the undersigned explained that Densmore had in fact interviewed with Pretrial during which he provided the officer with the information that the PSR said was unavailable, including but not limited to, general background, community ties, employment, family ties, marital/children status, medical/mental health, drug/alcohol information that fact that Densmore does little travel and does not have a passport.  This information also included where he had and could reside if released.  The undersigned explained what Densmore had previously explained to Pretrial regarding his background and recent residence and living situation.  Densmore was born in Michigan and after time in foster care, moved to Las Vegas with his adopted family when he was six (6) years old.  He has lived in Las Vegas since then until the COVID-19 shutdown, at which time he was layed off from his security job for Special Operations Associates, Inc. (SOA) at 3405 Cambridge here in Las Vegas.  After his layoff due to the pandemic, he went back to Detroit, Michigan to stay with his biological father, Ricardo Palmer, who supported his son during his layoff.  Densmore came back home to Las Vegas in early to mid-May and was advised he could come back to work in mid-June and planned on getting his own place as soon as possible.  In the meantime, his friend, Aliyah Durant, said he could reside with her

at 6666 W. Washington Blvd.  In addition, Densmore had an alternative option for residence, as his biological father was willing to help with financial support for a temporary residence here in Las Vegas and/or could provide his with residence in Michigan once again.

Based on these representations, that had been completely left out of the PSR with no attempts made to verify before the hearing, Magistrate JudgeWeksler trailed Densmore's matter and requested that the pretrial officer contact Densmore's friend, Aliyah Durant, and Densmore's father, Ricardo Palmer, the individuals Densmore could live with if granted release, and attempt to verify said information.  During the break, Pretrial spoke with these individuals and verified the information.  Ms. Durant confirmed that Densmore could reside with her if released and Mr. Palmer verified that he could provide his son with temporary financial support and a residence by way of either obtaining an immediate place for his son to reside in Las Vegas or by immediately provided tranportatation for his son to travel to Michigan to reside with him once again.

After a lengthy and thorough hearing, in which all the arguments of prosecutors and all three (3) defendants were considered, Magistrate Judge Weksler made detailed findings supporting her order for release.  Specifically, as reflected in the undersigned's notes from the hearing, Magistrate Judge Weksler found that the government did not meet *their* burden regarding flight risk and danger to the community.  As to flight risk, the Magistrate noted that this was a serious and concerning crime which carried a serious 5-year penalty.  Additionally, noting that it being the least important factor, the Magistrate did find that the weight of the evidence (the existence of video of incident, Densmore's confession to watching and recording the incident, etc.) was in the government's favor.  Further, while Densmore did have some failures to appear (FTAs), the FTA in 2014 had no disposition, and the FTAs appeared to be for traffic violations.  Denmore's record did not reflect repeated FTAs in the last two (2) years.  Moreover, residence if released for Densmore was verified by Pretrial with his friend Durant at 6666 W. Washington, #471, with no outstanding concerns from Pretrial regarding said residence.  Residence

was also confirmed if necessary by Densmore's father in Michigan, who the Magistrate found is in touch and willing to do whatever it takes to see his son succeed, including being a third-party custodian. Lastly, Densmore, while not verified by Pretrial, has been and intends to continue employment as a security officer.  As such, the Magistrate found Densmore has strong ties to the community and family support.

In addition to the finding that the government did not meet their burden regarding flight risk, Judge Weksler also found that the government did not meet their burden regarding danger to the community.  Again, the Magistrate noted that the nature and circumstances of the offense were concerning but that the context of the incident had to be considered.  Based on Densmore's history and the protests ensuing, this appeared to be an isolated case under isolated and extreme circumstances.  The Magistrate found that Densmore's misdemeanor domestic violence charge that had serious allegations was a concern but that he had been successfully supervised, completing all the requirements of probation, including classes, fines and community service.  As such, the Magistrate found that overall, the burden, placed solely on the government in this case, was not met.

After making these detailed findings and incorporating similar and additional findings made during the hearings of the codefendants, Magistrate Judge Weksler ordered Densmore to be released under strict conditions, including amongst other conditions, house arrest and GPS monitoring, in which the device would be installed and activated first thing Monday morning at his meeting with Pretrial.  In addition to fashioning these strict conditions, the Magistrate gave stern warnings to Densmore regarding his lock-down status.  Nevertheless, the government orally moved for a stay of the release order.  The Judge had previously discussed the request for the stay with the government during the Walker detention hearing and as with Walker, denied the government's motion for a stay.

Densmore's detention hearing conluded at 7:55 p.m. on Friday night.  One and one-half (1 ½) hours later, the Government filed an "Emergency Motion for Stay of Magistrate Judge's Release Orders

Pursuant to 18 U.S.C. §3145(a)." ECF Dkt. #5. Within thirty (30) minutes, this Court granted a Stay. Densmore and Walker were in route to Las Vegas in a CCA van when it abruptly turned around. They were not given a reason. Densmore learned of the Stay during a telephone conversation with his undersigned counsel on Saturday, the day after the government's request for stay was granted. Densmore remains detained and is being held in custody at the Nevada Southern Detention Center.

**III.  ARGUMENT**

  **A. Magistrate Judge Weksler properly considered all factors when she ordered the release of Densmore with conditions in this non-presumptive case**

As this Court knows, the Bail Reform Act expressly provides that a defendant shall be released pending trial unless the Court finds release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.18 USC §3142(b). Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant. *United States v. Santos-Flores*, 794 F.3D 1088, 1091-92 (9th Cir. 2015).

As set forth above, Magistrate Judge Weksler considered all factors when it was determined that Densmore be released with conditions and the government is misleading this Court in its representions about the detention hearing in its Motion for Review. First, the government states that Pretrial "…discovered criminal history that included failures to appear in 2014, 2016 and 2018, as well as a conviction for domestic battery in 2019." ECF Dkt. #5, Page 3. While this is in fact true, the government does not mention that the failure to appears were for citations and based on non-payments of those citations. PSR Page 2. Undersigned counsel reviewed the case docket for Densmore's 2019 Las Vegas Justice Court case. Densmore was supervised during that case, appeared in court on multiple occasions, successfully completed all the requirements, and the case was closed. As set forth above, Densmore's criminal history was considered and specific findings were made in that regard before Judge Weksler ordered Densmore's release with conditions. Densmore has no felony arrests or convictions. The overstatement and emphasis on a minor criminal history by the government to this Court is misleading.

Second, the Government states that as to Densmore, "pretrial services was not able to determine residential history or employment…" ECF Dkt. #5, Page 3. To address the residential aspect, pretrial services ran a Lexis Nexis search and found residential history, however, failed to confirm or deny those were previous addresses. As set forth in more detail above, Densmore has resided in Las Vegas since he was six (6) years old and conveyed that to the pretrial officer. This was also represented to the Court at the detention hearing. Densmore briefly left Las Vegas from March 2020 through May 2020 to go to Detroit, Michigan to spend time with his biological parents after being layed of due to the COVID-19 pandemic and therefore moved from his previous residence that he lived at for over a year. He returned to Las Vegas in May and had been living with friends waiting to go back to work in mid-June and provided his friend's name and address to pretrial services as a place he could reside if granted release. Densmore also provided the information for his father in Michigan where he could also reside if released. The pretrial officer did not attempt to make contact with these individuals or verify the address until after the hearing had started. However, at the Court's direction, Pretrial did in fact verify the information provided by Densmore and when asked, advised the Magistrate that he had "no concerns" regarding the information and addresses which he was able to verify.

Additionally, Densmore provided a place of employment where he had worked for the majority of the last two (2) years, a local security company, Special Operations Associates, Inc (SOA). He told the pretrial officer he had been laid off in March because of COVID-19 but was scheduled to go back to work the next couple of weeks. At the beginning of interview, the undersigned advised the officer that she had the contact information and name of the manager but the pretrial officer ended the interview in a rush, did not obtain the manager's information and apparently did not call the office to verity employment. Nevertheless, the employment and residential concerns were fully addressed by Magistrate Judge Weksler to her satisfaction before she granted Densmore a release with conditions. As such, the government is again misleading this Court.

Lastly, while the government supports it argument by asserting that Pretrial requested Densmore be detained, this too is misleading. The government leaves out the fact that the primary basis for the the detention recommendation in the PSR was the inability of pretrial to obtain and verify information. However, at the time of its filing of the stay motion, the government was well-aware that the PSR to that extent was factually incorrect. In fact, Pretrial *did* obtain most of the information the PSR says it lacked and simply failed to provide the Magistrate with the information and conduct its due diligence as law and equity requires. In any case, the Magistrate was eventually provided the information she needed during the hearing and Pretrial, upon her direction, did in fact verify the information Magistrate Judge Weksler required.

The totality of these omissions and misrepresentations by the government must be considered by this Court. In light of all the circumstances discussed herein, it is clear that Magistrate Judge Weksler thoughtfully and thoroughly considered all of the § 3142(g) factors during the lengthy detention hearing and appropriately found releasing Densmore on conditions was appropriate in this case.

**B. The Government provides no authority for the Court to enter a stay order and Densmore should be immediately released**

The government provides no authority supporting its request for an emergency stay and the Court should release Densmore immediately. Defendant Walker is represented by the Erin Gettel, Esq. from the Federal Public Defender's Office, whom has filed an Emergency Motion for Release. ECF Dkt. #9. In said motion, the issue of the authority relating to a emergency stays is briefed extensively, See Dkt # 9, Pages 4 through 8. Defendant Densmore hereby joins said arguments and it is requested that same be fully incorporated herein on his behalf.

The government's motion was brought pursuant to 18 USC § 3145(a). In its motion, the government does not provide legal authority to whether this Court has the authority to grant an emergency stay of a magistrate judge's release order pending appeal to the district judge. Section 3145 does not authorize an emergency stay of a release order pending review by a district judge in the

circumstances that occurred here, especially where the defense had no opportunity to respond. Nor does this procedure find any support in this District's local rules governing review of release and detention orders. See ECF Dkt. # 4 through 6.

The case law provided by the government, *United States v. Fernandez-Alfonso*, 813 F.2d 1571, 1572 (9th Cir. 1987) and *United States v. Brigham*, 569 F.3d (220, 230 (5th Cir. 2009) provide no support for the government's request for a stay. As such and for the reasons set forth herein and for the reasons fully briefed in the Emergency Motion for Release. Dkt. #9, Pages 5 through 7, filed by FPD counsel on behalf of Walker and joined by Densmore in this matter, Densmore should be released under the conditions imposed by Magistrate Judge Weksler.

IV. **CONCLUSION**

The government has provided no support for the stay procedure it employed in this case and this Court's authorization of same has resulted in Densmore's illegal detention. As such, Densmore should be immediately released under the strict conditions imposed by Magistrate Judge Weksler. Requiring the government to follow the appeals procedure set forth in § 3145 will in no way render the government's right to appeal the Magistrate Judge's release order illusory. However, if the stay procedure used in this case is permitted to stand, the ability of Magistrate Judges to issue release and detention orders in this district will in fact become illusory. This practice not only violates the fundamental constutional rights afforded to Ricardo Densmore, but will irreparabley harm the fundamental liberty interests without due process of law of all defendants appearing in this district.

:.
Dated this 7th day of June, 2020.

                    /s/ Ivette Amelburu Maningo
IVETTE AMELBURU MANINGO, ESQ.
NEVADA BAR NO.: 7076
400 S. Fourth Street, Ste. 500
Las Vegas, NV 89101
Tele.: (702) 793-4046
Fax: (844) 793-4046
Email:iamaningo@iamlawnv.com